IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 22, 2008

## JASON D. PILLOW v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Maury County**
**No. 11850      Robert L. Jones, Judge**

---

**No. M2007-00490-CCA-R3-PC - Filed June 25, 2008**

---

The petitioner, Jason D. Pillow, appeals the denial of his petition for post-conviction relief. In this appeal, he contends that he received the ineffective assistance of counsel at trial and on appeal and that the sentence imposed by the trial court violates the terms of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004). Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ. joined.

Stanley K. Pierchoski, Lawrenceburg, Tennessee, for the appellant, Jason D. Pillow.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Michel T. Bottoms, District Attorney General; and Dan Runde, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

A Maury County Circuit Court grand jury charged the petitioner with one count of felony murder, two counts of attempted first degree murder, one count of especially aggravated robbery, two counts of attempted especially aggravated robbery, one count of felony reckless endangerment, and one count of especially aggravated burglary. A petit jury convicted the petitioner of one count of second degree murder, two counts of facilitation of attempted first degree murder, three counts of facilitation of attempted especially aggravated robbery, one count of felony reckless endangerment, and one count of facilitation of aggravated burglary. The trial court imposed an effective sentence of 55 years. This court affirmed the convictions and sentence on direct appeal. *See State v. Jason D. Pillow*, No. M2002-01864-CCA-R3-CD (Tenn. Crim. App., Nashville, Feb. 27, 2004), *perm. app. denied* (Tenn. 2004).

"On February 22, 2000, three armed gunmen entered the apartment shared by Chastity and Brandi Buie and shot Randy Massey, Paul Readus, and David Houston. Houston was killed." *Id.*, slip op. at 1. Ten-year-old Eric Taylor testified that "Massey, Readus, and Houston were at the apartment just prior to the shooting. He recalled that shortly before the shooting, he overheard [Pharez] Price, who was in one of the bedrooms talking on the telephone, tell someone to 'bring the guns.'" *Id.*, slip op. at 3. Evidence established that the Buie sisters and their young children were present in the apartment during the invasion. As a result of injuries received during the attack, Readus was paralyzed and Massey suffered permanent nerve damage requiring hip replacement. The petitioner provided the following statement to the authorities:

> Omar Jennings came to me as if a drug deal was going down. There was some boys from out-of-town that wanted some drugs. Omar was setting everything up with Pharez.
>
> When we went to the apartment, I was going to serve them. Sell them drugs. It was me, Demarcus Gant, and Omar Jennings. Omar was driving.
>
> . . . .
>
> When we went to the apartment, we all had guns. I had a gun, because I was going to make a transaction. I did not know a robbery was going down. I did not have a mask on. I think Marcus may have had one on.
>
> We went up to the door and knocked. They opened the door. Omar and Marcus went in. They started fighting with the guys inside, and there were gunshots. I was the last inside the apartment. When I went in, I shot. I shot the guy who didn't make it outside. The guy that died. He was in the front room on the floor when I left.
>
> After it went down, we ran back to the car and left. The gun I used was given to Omar. I don't know what he did with it. It was a chrome revolver. It had a short barrel. Since this happened, we haven't talked about it. When it happened, they was fighting. I didn't want to shoot nobody. It wasn't supposed to go down like that.

*Id.*, slip op. at 4. At trial, the petitioner again admitted shooting Houston and expressed regret over Houston's death.

Following the denial of his application for permission to appeal to our supreme court, the petitioner filed a pro se petition for post-conviction relief alleging that he was denied the effective assistance of counsel at trial and on appeal, that his conviction was based on a coerced

-2-

confession, that his conviction was based on a violation of his privilege against self-incrimination, and that certain of his convictions violated double jeopardy protections. After the appointment of counsel and the filing of an amended petition for post-conviction relief, the post-conviction court held an evidentiary hearing on December 21, 2006.

At the hearing, the petitioner claimed that his trial counsel said that "if I could get him $20,000.00, that I wouldn't get no more than 20 years." The petitioner stated that after he was unable to procure the money, his trial counsel "didn't put no effort in pursuing nothing concerning my case." The petitioner insisted that trial counsel did not discuss a defense strategy or the merits of the State's case at either of their first two meetings and that their conversations were "pretty much about the money." The petitioner stated that the third meeting with trial counsel did not occur until nearly a year after the second and that, at that time, he told his counsel that he "did not commit this crime," but trial counsel "didn't adhere" to his claim of innocence. He claimed that his trial counsel told him that his trial testimony "need[ed] to comply with the statement" he provided to the authorities. The petitioner insisted that trial counsel advised him to lie at trial.

The petitioner also claimed that trial counsel "did not investigate this case, factually." He asserted that trial counsel failed to interview any of his co-defendants or any of the victims in the case. The petitioner argued that if trial counsel "had talked to Mr. Gant, or interviewed Mr. Gant, then they would have seen that it was impossible for me to actually be the one that committed this crime, that I confessed to." The petitioner admitted, however, that he "never just actually told [trial counsel] what happened." The petitioner claimed that his attorney should have interviewed a Terry Strayhorn but admitted that he never asked him to do so. The petitioner also alleged that his trial counsel failed to file any pretrial motions. As to his double jeopardy claim, the petitioner insisted that "Count 2 and 3 should have all been submerged into one instead of them trying me for reckless endangerment of the same two people." When the post-conviction court explained that the offenses named separate victims, the petitioner stated that his "interpretation" of the offenses differed from that offered by the court.

The petitioner testified that trial counsel was ineffective by failing to object to the lack of corroborating evidence of attempted especially aggravated robbery, explaining, "I just felt like that there wasn't enough evidence to convict me of facilitation of especially [aggravated] robbery." The petitioner claimed that the count alleging aggravated burglary was "vague and ambiguous, overbroad, and unconstitutional" because he didn't "feel like what happened, as far as us going into their house was aggravated."

During cross-examination, the petitioner again admitted providing a statement to police wherein he admitted shooting David Houston. The petitioner also admitted writing a letter to a "Mary Lou" wherein he stated,

> Being completely honest, I did shoot who I said I shot, but my lawyer
> has evidence showing that I couldn't have done it. . . . [W]hen I go
> back to court. . . . I'm going to testify to Marcus killing the guy,
> making him stay with me, 'cause he thought I would tell. I'm going

to tell them how he threatened me for six months and made me take the charge.

Trial counsel testified that the petitioner's "was a tricky case" because the petitioner had "given this statement, where he had flat out said, I shot the guy." He recalled that the petitioner at one point asked, "[W]hat if I got on the stand and said, I didn't do it[?]." Trial counsel stated that he worried that the petitioner might commit perjury but recommended that he take the stand anyway. Trial counsel testified that he never told the petitioner what to say but did explain the ramifications of changing his statement on the stand. Trial counsel recalled that the State presented a plea offer for 40 years as a Range I offender, but the petitioner rejected the deal. He stated that he "strongly encouraged" the petitioner to take the offer because "the State had a pretty solid case."

Trial counsel testified that the petitioner's was his first murder trial and that, as a result, he over-prepared. He stated that he sat through most of Mr. Price's trial in order to see and hear the witnesses' testimony before the petitioner's trial. Trial counsel testified that he did not interview any of the petitioner's co-defendant's prior to trial because "[t]heir counsel would have never allowed me to just go in there and having cart blanc [sic] in questioning their clients, so I didn't have that opportunity."

During cross-examination, trial counsel denied that the petitioner told him he was innocent. He testified, "Mr. Pillow never denied, to me, that [he] was, in fact, the one who shot Mr. Houston." Trial counsel acknowledged that he discouraged the petitioner from offering testimony "that was just going to fly in the face of all of the other proof." He stated that he told the petitioner that "he needed to tell the truth." Trial counsel also stated that he tried to get the petitioner to accept the State's offer but that the petitioner "just . . . did not want to take the pleas." Trial counsel testified that he "liked" the petitioner and felt as though he had "tried the best case that we could" for the petitioner.

At the conclusion of the hearing, the post-conviction court found that "it seems clear, from the record, that [trial counsel] was enthusiastically and zealously defending his client at all stages of the proceedings, from shortly after the arrest, all the way up through posttrial proceeding[s], until Mr. Kelly took over [for] appeal purposes." The court also found that the petitioner "in addition to being a murderer, is also a liar." The post-conviction court concluded that the petitioner "failed to show . . . how [trial counsel] failed, in any way, to adequately and effectively" represent him.

In its written order denying post-conviction relief, the post-conviction court found that the petitioner "failed to introduce any evidence that his trial counsel failed to interview any specific witnesses or failed to develop any available defense." The court concluded that the petitioner's testimony was "not credible" and that "the petitioner cannot effectively blame his trial counsel for failing to advocate a defense that the petitioner has just recently invented and contrary to the petitioner's trial testimony." The post-conviction court ruled that the petitioner's claims with regard to trial counsel's failure to preserve issues regarding corroborating evidence, the presentation of inconsistent theories of prosecution, and double jeopardy were "totally unfounded." Regarding

the issues of consecutive sentencing and lesser included offenses, the post-conviction court concluded that these issues had been previously determined.

In this appeal, the petitioner contends that the trial court erred by imposing consecutive sentences and that his trial counsel was ineffective for failing to raise this issue in his motion for new trial. He also asserts that his appellate counsel was ineffective for failing to present this issue on appeal. The petitioner also asserts that his sentence violates the mandates of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), and its progeny.

The petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. *Brooks v. State*, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988).

## *I. Ineffective Assistance of Counsel*

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693 (1984). The error must be so serious as to render an unreliable result. *Id.* at 687. It is not necessary, however, that absent the deficiency, the trial would have resulted in an acquittal. *Id.* at 695. Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

*Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001); *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

The petitioner complains that his trial counsel was ineffective by failing to raise in a motion for new trial any objection to consecutive sentencing. He also contends that his appellate counsel was ineffective by failing to object to consecutive sentencing on appeal. The record, however, establishes that the petitioner's claim is unfounded. As indicated in this court's opinion on direct appeal, the issue of consecutive sentencing was addressed by both the petitioner's trial and appellate counsel. This court thoroughly considered the issue and found that although "the trial court failed to specifically find that an extended sentence reasonably related to the severity of the offenses and was necessary to protect the public against further criminal conduct by the defendant," the record established "that consecutive sentencing is appropriate." *Jason D. Pillow*, slip op. at 27. Because the propriety of consecutive sentencing in the petitioner's case was considered by this court on direct appeal, this claim is not available in the post-conviction setting. *See* T.C.A. § 40-30-106(h) (2006). Moreover, the fact that this court considered the claim on direct appeal belies the petitioner's contention that his counsel failed to preserve the issue. In consequence, he is not entitled to relief on this issue.

## II. Blakely Issue

As his final contention, the petitioner asserts that his sentence was imposed in violation of the holding in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004). The State contends that the petitioner waived this issue by failing to present it on direct appeal.

The petitioner was tried and sentenced in 2002, some two years before the decision in *Blakely*. The direct appeal to this court was complete in February 2004, four months before the *Blakely* decision. "*Blakely* did not announce a new rule and . . . even if *Blakely* had announced a new rule, relief [can] be granted only in 'pipeline' cases . . . ." *David Earl Palmer v. State*, No. W2005-01421-CCA-R3-PC, slip op. at 9 (Tenn. Crim. App., Jackson, Nov. 3, 2006); *see also Billy Merle Meeks v. Ricky J. Bell, Warden*, No. M2005-00626-CCA-R3-HC (Tenn. Crim. App., Nashville, Nov. 13, 2007). Like the petitioner in *Palmer*, this petitioner's "case is a separate collateral attack and is not in the pipeline." *Id.* In consequence, the petitioner would not be entitled to relief even if his sentence runs afoul of the holding in *Blakely*.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE